Bill R. **HERRING**, Appellee,

v.

**UNITED STATES of America,**
**Appellant.**

No. 85–1058.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 15, 1985.

Decided Jan. 3, 1986.

Fletcher Jackson, Asst. U.S. Atty., Little Rock, Ark., for appellant.

Roy Gene Sanders, Little Rock, Ark., for appellee.

Before HEANEY, Circuit Judge, and HENLEY, Senior Circuit Judge, and McMILLIAN, Circuit Judge.

McMILLIAN, Circuit Judge.

The government appeals from a final order entered in the District Court [1] for the Eastern District of Arkansas awarding Bill R. Herring the amount of $4,686.10 for attorney's fees and costs under the Equal Access to Justice Act (EAJA), 28 U.S.C. § 2412(d)(1)(A) (as amended and extended by Act of Aug. 5, 1985, Pub.L. No. 99–80, 99 Stat. 183 (1985)). *Herring v. United States*, No. LR–C–80–362 (E.D.Ark. Nov. 9, 1984) (*Herring II*) (order). The award was made by the district court before the case was reversed and remanded on appeal. *United States v. Herring*, 750 F.2d 669, 674 (8th Cir.1984) (*Herring I*).

For reversal the government argues that Herring cannot now be considered the prevailing party nor can it be held that the government's position was not substantially justified. For the reasons discussed below, we affirm the order of the district court.

The underlying facts are set forth in detail in *Herring I, id.* at 670. In 1960 the government condemned large numbers of tracts of land for the Greers Ferry Dam and Reservoir flood control project in Arkansas. Herring was later found to be the owner of three acres of the land condemned. Notice was given by publication in the local newspaper, but Herring was living in Arizona at the time, was not personally served, and claims that he was unaware the condemnation proceedings included his land. He had planned to build his retirement home on the three acres.[2] The government made a declaration of taking on the land in May 1960, obtained a court order of possession in May 1960, and in August 1960 obtained a judgment on stipulation which, by the district court's

---

1. The Honorable G. Thomas Eisele, Chief Judge, United States District Court for the Eastern District of Arkansas.

2. Herring's three acres were part of tract # 2118, which contained 27.5 acres. A.L. Clark owned the rest of tract # 2118, as well as tracts # 2118E–1, which contained four acres, and # 2118E–2, which contained one acre. Just

compensation for all three tracts was determined to be $750. Clark received $575 in November 1960; the remaining funds were held in the registry of the court subject to other possible outstanding interests. In August 1962, the remaining funds were apparently paid to Clark. Herring *did not* receive any of the funds.

decree, confirmed the vesting of title to the property in the United States.

In 1980 Herring filed suit under the Quiet Title Act, 28 U.S.C. § 2409a, challenging the government's title because he had not received notice of the 1960 condemnation proceeding. He asked the district court to declare that he owned the title to the three acres and that the government had no claim of right, title or interest in the land. Herring argued that if he prevailed, the government could elect to retain possession and pay him the value of the land at current prices or it could give up possession. The government defended the suit, asserting, among other things, that (1) notice was properly given and even if notice was inadequate, inadequate notice would not void the government's title, (2) Herring should have brought suit for just compensation under the Tucker Act, 28 U.S.C. §§ 1346, 1491, instead of suing under the Quiet Title Act, and (3) the government had adverse possession. In the alternative the government argued that if Herring had any claim on the land, he had only an equitable lien for just compensation for the value of the land as of 1960, plus interest.

The district court held that Herring could sue under the Quiet Title Act, inadequate notice voided the government's declaration of taking and Herring continued to own fee title to the three acres.

On appeal a panel of this court held that the Quiet Title Act can be invoked to collaterally attack the government's title acquired through condemnation under the Declaration of Taking Act, but that inadequate notice does not void the government's title. *Herring I*, 750 F.2d at 671. The court held that Herring had an equitable lien in the property that entitled him to just compensation, calculated as the fair market value of the land as of the date of taking, and remanded the case to the district court for determination and award of the amount of just compensation, plus interest. *Id.* at 674.

While the appeal was pending, Herring filed a motion for attorney's fees and costs under the EAJA. The district court re-

ferred the motion to a magistrate for an evidentiary hearing and recommended disposition. The district court held that Herring was a prevailing party, the position of the government was not substantially justified and no special circumstances existed which would make the award of attorney's fees unjust and awarded attorney's fees and costs in the amount of $4,686.10. *Herring II*, slip op. at 1–2. This appeal followed.

■ We hold that the district court did not abuse its discretion in awarding Herring attorney's fees and costs under the EAJA. The government argues that Herring cannot be a prevailing party because he sued for title, not compensation. However, Herring successfully brought the underlying action under the Quiet Title Act, *Herring I*, 750 F.2d at 671, and, although he did not obtain title, he was successful in the sense that he obtained recognition of his right to just compensation. *Id.* at 674 (landowner has equitable lien dischargeable by the government by payment of just compensation). The case was remanded for determination and award of the amount of just compensation. *Compare Hanrahan v. Hampton*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980) (per curiam) (procedural remand only). Herring was thus successful on two issues, use of the Quiet Title Act to collaterally attack the government's title and the right to just compensation.

■ The government next argues that Herring cannot be awarded attorney's fees under the EAJA because the government's position was substantially justified. "[W]e must consider the totality of the circumstances—prelitigation and during litigation—in determining whether the position of the government was substantially justified." *United States v. 341.45 Acres of Land (St. Louis County, Minn.)*, 751 F.2d 924, 940 (8th Cir.1984). The government's litigation position, before the district court and on appeal, cannot in and of itself be considered unreasonable. At the time of litigation, whether the Quiet Title Act could be used to collaterally attack title in condemnation cases on the basis of inadequate

notice to the landowner was an issue of first impression in this circuit and had been decided by only one circuit court of appeals. *See Fulcher v. United States*, 632 F.2d 278 (4th Cir.1980) (banc); *accord United States v. 125.2 Acres of Land (Nantucket, Mass.)*, 732 F.2d 239 (1st Cir. 1984). However, the magistrate concluded that the government's *pre* litigation position was unreasonable because the government failed to make an offer to settle Herring's claim. *Herring II*, tr. at 7 (Sept. 6, 1984) (magistrate's oral recommendation). We cannot conclude that the district court abused its discretion in finding that, under the totality of the circumstances, the government's position was not substantially justified.

Accordingly, we affirm the order of the district court.

HENLEY, Senior Circuit Judge, dissenting.

I cannot join the court's award of $4,686.10 in attorney fees and costs for preservation of an interest in real estate worth, exclusive of interest, something less than $100.00 or thereabout.

Here, the money at issue is important, not so much as a factor in determining reasonableness of the award for fees, as in assessing the *pre* litigation position of the respective parties to the litigation.

The court today finds the government unreasonable in failing to make a prelitigation offer to settle Herring's claim. Yet one may search the record in vain for any indication that at or immediately before filing of his complaint Herring would have entertained an offer of $100.00 plus interest from date of taking in 1960. On the contrary, Herring's position, so far as the record reflects, was that he had title to the lands in question and if the government wanted the land it should pay for it at current inflated prices. Indeed, it was the government's suggestion, never adopted by Herring, that if Herring was entitled to

anything, it was compensation at 1960 prices.

It strains imagination to predicate an award of fees on the likelihood that any realistic offer based on 1960 land values would have been accepted. For Herring, a bundle of money, or title to the land, was the thing.[1]

In considering EAJA claims, it is now accepted in this circuit that substantial justification for the government's position must be determined by consideration of the totality of the circumstances—prelitigation and during litigation. *United States v. 341.45 Acres of Land*, 751 F.2d 924, 940 (8th Cir.1984). Today's majority finds that it cannot conclude that the district court abused its discretion in finding that, under the totality of the circumstances, the government's position was not substantially justified. The district court made no express findings of its own on the issue of attorney fees. Rather, that court accepted the recommendation of the magistrate, concluded that Herring was a prevailing party, that the position of the government was not substantially justified, and made an award of fees. We may assume that both the district court and the magistrate considered, although they did not detail, the totality of the circumstances as known to them at the time.

However, as the case then stood, this court had not announced its decision in *Herring I*, 750 F.2d 669, and neither the district court nor the magistrate had reason to believe the basic decision of the district court would be reversed on the merits. Thus, in affirming an award of fees, we have no way of knowing what weight our reversal might have had in the district court's examination of the totality of the circusmtances. While this court styles its affirmance on the fee award as a failure to find an abuse of discretion, since the totality considered by the district court and the magistrate necessarily was based on an erroneous view of the outcome of the case, in effect it is clear that this court is

---

1. The Indiana humorist, "Kin" Hubbard, has been quoted as saying "When a fellow says 'It ain't the money it's the principle of the thing,' it's the money."

making its own evaluation de novo guided by the magistrate's view of prelitigation conduct.

Turning then to de novo consideration, I find it difficult to hold that Herring was a prevailing party. Basically, Herring did not sue for compensation, which is yet to be determined;[2] he sued for title. There is a distinction between lawsuits regarding the authority and validity of condemnation proceedings and lawsuits concerning the amount of compensation owed to property owners. *341.45 Acres of Land,* 751 F.2d at 937 (quoting *Government of Virgin Islands v. 19.623 Acres of Land,* 602 F.2d 1130, 1135–36 (3d Cir.1979)). Since Herring sued for title, he cannot be considered the prevailing party on that issue simply because he was found to be entitled to some minimal compensation.

It is quite true that a party can be considered a prevailing party if he receives some benefit he sought in bringing the suit, even if he does not win on all issues. *341.45 Acres of Land,* 751 F.2d at 936 (quoting H.R.Rep. No. 1418, 96th Cong., 2d Sess. 11, *reprinted in* 1980 U.S.Code Cong. & Ad.News 4953, 4990). Herring, however, did not win any substantial benefit he sought in bringing this suit. As stated, he asked for title, and he lost. The government prevailed on most of the significant issues. The government argued that its title could not be voided by insufficient notice and it was correct. Although Herring prevailed on the procedural issue of which statute he could sue under, and on some collateral issues such as adverse possession, the government prevailed on the substantive issue of title.

But accepting for present purposes the conclusion that Herring was a prevailing party in that he won the right to proceed as he did and successfully maintained an attack on the validity of the government's original service of process and its subsequent possession, it is clear that the government's litigation position was substantially justified. The majority here concedes as much with respect to the government's position concerning the use of the Quiet Title Act as a vehicle for collateral attack on title in condemnation cases.

Going further, I find that at trial of the issues of service of process and adverse possession, the government presented a formidable, though losing defense. The government was relying on solemn decrees of the district court awarding possession, fixing compensation and confirming title. For some unknown reason, in deciding the issue of possession the district court apparently took no note of the order of possession and it was unpersuaded by evidence of at least one sign posted on the property by the government, of instructions given to one Jones to keep trespassers off the property, and of at least some degree of intermittent flooding of portions of the land.

With respect to both validity of service upon or notice to Herring and possession the district court relied in part upon Herring's payment of taxes for years since 1960 and charged the government with knowledge of addresses shown on certain alleged tax receipts for such years, evidently without recognizing that once the land was condemned and notice given, as it was, to county tax officials, the land in question was not subject to local taxation and there was no reason for any government official to be aware of local tax records.

In short, the government might well have won on all issues and arguably should have won on all issues.

Ultimately then the case comes to a de novo decision as to whether the government should have made a prelitigation offer to settle Herring's claim. Let us examine the state of affairs existing in 1980 when Herring's claim arose. As of 1980 the government was armed with title based upon condemnation proceedings completely regular so far as the government reasonably could be expected to determine. Service by publication was regular on its face.

**2.** Since we decided in *Herring I,* 750 F.2d at 674, that Herring had an equitable lien, the issue of the amount of compensation is only now being decided. It is not suggested that compensation at 1960 levels is much, if any, more than minimal.

Herring not being found within the jurisdiction and his address being unknown, attempted personal service was returned by the marshal *nulla bona.*

After twenty years the government's administrative files had been stripped of detail and were no longer available. The Greers Ferry Dam and Reservoir had been fully operable and operating for many years. The government with good reason had thought its operation and possession for years under facially regular court decrees and a declaration of taking were eminently correct. In such circumstances, what offer of any consequence could the government justifiably make? To ask the question is to answer it—none!

It seems to me that what the court is doing here is imposing punishment for a mistake the court thinks the government made in 1960 in the original condemnation case. If there was such a mistake, which I doubt, it does not justify an award of attorney fees here.

As indicated, I dissent.